418 So.2d 1164 (1982)
James Randolph HOWELL, Appellant,
v.
STATE of Florida, Appellee.
No. AD-343.
District Court of Appeal of Florida, First District.
August 31, 1982.
Rehearing Denied October 1, 1982.
*1166 Michael E. Allen, Public Defender and Melanie Ann Hines, Asst. Public Defender, Tallahassee, for appellant.
Jim Smith, Atty. Gen. and Gregory C. Smith, Asst. Atty. Gen., Tallahassee, for appellee.
ERVIN, Judge.
Howell appeals his adjudication of guilt for the offense of selling, delivering or possessing cannabis with the intent to sell, entered following his plea of nolo contendere. The plea in turn was conditioned upon his right to appeal the denial of his motion to dismiss the information, which had alleged that his constitutional right to speedy trial had been violated due to the delay between the asserted date of the offense and his arrest. We affirm.
In this case, we identify and distinguish principles applicable to the determination of constitutional deprivations under the United States Constitution's Sixth Amendment Speedy Trial Clause and the Fourteenth Amendment Due Process Clause. We distinguish the considerations applicable to each respective clause, and expand upon our previous opinion in State v. Griffin, 347 So.2d 692 (Fla. 1st DCA 1977), cert. dismissed, 358 So.2d 134 (Fla. 1978).
Appellant, James Howell, sold a small quantity of marijuana on August 8, 1979 to *1167 an undercover agent. Four months later, on December 19, 1979, an information was filed against him, but appellant was not arrested until December 5, 1980. Shortly thereafter on February 27, 1981, appellant filed a motion to dismiss, alleging only that his constitutional rights to a speedy trial had been violated. Consequently, this case does not involve, nor do we address, the applicability of Florida Rule of Criminal Procedure 3.191(a)(1). At the March 6, 1981 motion hearing, the appellant testified that he had been prejudiced by the delay in bringing him to trial, because he was unable to remember where he was or what he had been doing at the time the crime occurred. Further, he stated that neither his friends nor his roommate could remember his whereabouts at that time. He suspected that he may have been out of town on August 8th but was unsure.
No one testified for the state. Consequently, it was not determined why the arrest of appellant had been delayed for sixteen months after the occurrence of the crime and one year from the filing of the information. Appellant stated that he had not attempted to elude the authorities during this period. In fact, the appellant had been stopped on two occasions by police  once in St. Johns County for running a red light and on another occasion for falling asleep in his car at an apartment complex. Appellant contends that a routine radio check by the police for any outstanding warrants on either occasion would have resulted in an arrest. He also asserts that he had lived continuously in Gainesville, although he did admit to having moved three times prior to arrest.
The lower court voiced its concern about the delay between the date of the crime and defendant's arrest. This point manifests itself in the form of a fairly narrow legal question, to wit: Who has the burden of proof to account for the delay in arresting appellant? Should that burden be thrust on the state to show why the appellant had not been arrested in a more timely manner, or should it be placed on the appellant, since he was the one moving for dismissal of the charge against him? Although the lower court found there was no evidence regarding which of the two parties should explain the delay, it nevertheless denied the motion to dismiss. The appellant entered a plea of nolo contendere, specifically reserving the right to appeal the dispositive denial of the motion to dismiss. He alleges both a denial of his due process and speedy trial rights.
Initially, we note that delay during the four-month period between the occurrence of the crime and the filing of the information is one to be addressed under the Due Process Clause, while the delay during the fourteen-and-one-half month period between the filing of the information and the hearing on the motion to dismiss is one to be examined under the Speedy Trial Clause of the Sixth Amendment. United States v. MacDonald, ___ U.S. ___, ___-___, 102 S.Ct. 1497, 1500-01, 71 L.Ed.2d 696, 702-703 (1982). The Sixth Amendment right to a speedy trial becomes effective at the time of arrest or indictment, whichever comes first, and it continues until the date of trial. United States v. Gonzalez, 671 F.2d 441, 444 (11th Cir.1982). The distinction, as to the basis for constitutional consideration of delay, also requires one to bear in mind the dichotomous purposes of and interests protected by the two clauses.
The Due Process Clause protects against an oppressive delay. United States v. Lovasco, 431 U.S. 783, 789, 97 S.Ct. 2044, 2048, 52 L.Ed.2d 752, reh. denied, 434 U.S. 881, 98 S.Ct. 242, 54 L.Ed.2d 164 (1977). However, the purpose of the clause is not to afford wide-ranging protections based on shallow claims of prejudicial delay. MacDonald, supra, at ___ U.S. at ___, 102 S.Ct. at 1508, 71 L.Ed.2d at 711 (Marshall, J., dissenting). The intended application of due process notions is a narrow one, although prevention of oppressive actual prejudice[1] to the defense caused by the *1168 passage of time is the central concern of due process in a delayed arrest or indictment setting. Id. at ___ U.S. at ___, 102 S.Ct. at 1502, 71 L.Ed.2d at 704; State v. Griffin, supra, at 695. Proof of actual prejudice does not make valid a due process assault on delayed arrest or indictment. Rather, it merely makes such a claim ripe for adjudication. Lovasco, supra, at 431 U.S. at 789, 97 S.Ct. at 2048.
The speedy trial right of the Sixth Amendment, on the other hand, involves a different and more encompassing purpose. Its protections were carefully analyzed by the United States Supreme Court in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); see also United States v. Walters, 591 F.2d 1195, 1200 (5th Cir.), cert. denied, 442 U.S. 945, 99 S.Ct. 2892, 61 L.Ed.2d 317 (1979). Barker identified some of the problems stemming from a delayed trial as those including more time for increased plea bargaining to lesser offenses; opportunity for the commission of a crime by a defendant while the accused is on bond awaiting trial; a greater and more tempting opportunity to jump bail; increased incarcerations for those awaiting trial who have been arrested and unable to make bail; and the potential for jail overcrowding contributed to by those individuals in the immediate foregoing category. Barker, supra, at 407 U.S. at 519-520, 92 S.Ct. at 2186-87.
Perhaps the greatest evil which the Sixth Amendment speedy trial right proposes to counter is the potential for a witness's memory to lapse in regard to material matters as the delay for trial increases. Cf. Barker, supra, at 407 U.S. at 521, 92 S.Ct. at 2187. This not insignificant concern is a key point of distinction between the speedy trial right and all other constitutional rights of the accused, because it cuts both ways: "[T]he right to [a] speedy trial is unlike other constitutional rights because deprivation of the right may work to the accused's advantage. The fading of witnesses' memories with time may disadvantage the government far more than the accused because the government carries the burden of proof." United States v. Avalos, 541 F.2d 1100, 1110 (5th Cir.), reh. en banc denied, 545 F.2d 168 (1976), cert. denied, 430 U.S. 970, 97 S.Ct. 1656, 52 L.Ed.2d 363 (1977); cf. United States v. Edwards, 577 F.2d 883, 889-890 (5th Cir.), cert. denied, 439 U.S. 968, 99 S.Ct. 458, 58 L.Ed.2d 427 (1978).[2]
Thus, both the purposes of the due process and speedy trial provisions, as well as the time periods to which each is applicable, are different. Similarly, the analysis for determining violations of the respective rights is different, although there is one underlying theme common to both rights: both seek to avoid actual prejudice, and, for all practical purposes, the prejudice that can result to a defendant due to a pre-arrest delay is often indistinguishable from that arising from a post-arrest delay. Griffin, supra, at 694.
*1169 In Griffin, we set forth the general standards involved in pre-arrest/indictment due process violations attributable to time delay by the state. We stated:
The authorities appear to agree, and we so hold that a pre-arrest due process deprivation cannot be quantified into a specific number of days. Many factors must be taken into consideration; among them are the reason the government assigns to justify the delay and the judicial discretion of the trial court in evaluating the circumstances. Prejudice to the accused is the most important factor in evaluating the question of due process deprivation. No matter how long the delay, if within the period of the statute of limitations, unless the accused can demonstrate that he has been prejudiced thereby, the delay, per se, will not justify dismissal.
Griffin, supra, at 695 (footnotes omitted).
The Griffin language is somewhat vague as to the specific test to be used in detecting a due process' deprivation due to time delay. The test has been further clarified by various federal appellate courts since Griffin, but due to a conflict in the different federal circuit courts of appeal, there are still unanswered questions as to the precise nature of the test. We will attempt to answer these questions for the benefit of the Florida bench and bar. In Avalos, the court, relying on the United States Supreme Court decision in United States v. Marion, 404 U.S. 307, 324, 92 S.Ct. 455, 465, 30 L.Ed.2d 468 (1971), and other fifth circuit decisions, observed that a due process violation exists if criminal defendants can show: "(1) that they incurred substantial prejudice as a result of the government's delays and (2) that the prosecution had intentionally employed the delay to gain a tactical advantage." Avalos, supra, at 1107.
The Avalos court held that a showing of both factors in the foregoing test would demonstrate a due process violation, but acknowledged that "[t]here is no Supreme Court authority squarely holding that satisfaction of both elements of the test is necessary to find a due process violation." Id. at 1107, n. 9. Shortly after Avalos, a different fifth circuit panel read the Marion decision to require both a showing of actual prejudice and an intentional tactical delay, because the United States Supreme Court had indicated that a showing of prejudice alone only "`makes a due process claim concrete and ripe for adjudication.'" United States v. Brand, 556 F.2d 1312, 1317 n. 7 (5th Cir.1977), cert. denied, 434 U.S. 1063, 98 S.Ct. 1237, 55 L.Ed.2d 763 (1978), citing United States v. Lovasco, supra, at 431 U.S. at 789, 97 S.Ct. at 2048.
Later decisions from the fifth circuit following Brand reflect uncertainty as to the proper test to be applied in determining whether a due process violation occurred. For example, United States v. Medina-Arellano, 569 F.2d 349, 352, n. 2 (5th Cir.1978), stated, contrary to Brand, that "[t]he Supreme Court in Lovasco implicitly left open the question whether a showing of tactical delay by the government without actual prejudice to the defendant could require reversal." However, another panel appears to have readopted the position set forth in Brand. See United States v. Durnin, 632 F.2d 1297, 1299 (5th Cir.1980).
This apparent vacillation in positions suggests a division within the court, as well as an uncertainty as to the resolution of this issue.[3] Fortunately, the court significantly *1170 clarified its position in United States v. Townley, 665 F.2d 579, 581-582 (5th Cir.1982). That case stands for the proposition that something less than an intentionally caused delay by the prosecution might suffice to justify a finding of a due process deprivation, if actual prejudice is also present.[4] Consequently, for the determination of a due process deprivation, we adopt the following test approved in Townley:
Thus, in evaluating an asserted due process violation based on preindictment delay, Lovasco and Marion require us "to consider both the reasons for the delay and the prejudice to the accused." ... Further, the accused bears the burden of proving the prejudice and, if the threshold requirement of proof of actual prejudice is not met, the inquiry ends there... . Once actual prejudice is shown, it is necessary to engage "in a sensitive balancing of the government's need for an investigative delay ... against the prejudice asserted by the defendant." . .. The inquiry turns on "whether the prosecution's actions violated `fundamental conceptions of justice' or the community's sense of fair play and decency." .. . "Inherent in the adoption of a balancing process is the notion that particular reasons are to be weighed against the particular prejudice suffered on a case-by-case basis."
Townley, supra, at 581-582 (cites omitted); accord, United States v. King, 593 F.2d 269, 272 (7th Cir.1979).
Accordingly, it would appear to be the responsibility of the defendant to demonstrate actual prejudice resulting from any delay in arrest or indictments. Once the defendant has met his burden of proof, the burden shifts to the government to show why the delay was necessary. King, supra, at 272. It follows that if the defendant cannot meet his initial burden of proof, the inquiry need not proceed any further. Townley, supra, at 582 n. 2 and cases cited therein. In the case at bar, the appellant's claims of prejudice recounted the faded memories of his friends, as well as his own memory. It is unclear whether these memories faded due to the passage of four months from the time that the crime occurred until the filing of the information, or faded due to the passage of the far longer post-information period, which is to be scrutinized under the speedy trial standard set out in Barker v. Wingo, supra. Further, it is unclear in what material way these faded memories caused the appellant actual prejudice. Speculative allegations as to faded memories simply do not suffice to prove actual prejudice. United States v. Hendricks, 661 F.2d 38, 40 (5th Cir.1981); Medina-Arellano, supra, at 352-353; State v. Newman, 367 So.2d 251, 252 (Fla. 4th DCA 1979). Consequently, we are unable to find *1171 any due process deprivation due to delay in time.
With regard to appellant's charge that his constitutional speedy trial rights have been denied him, our analysis starts with Barker v. Wingo, supra, which delineates four factors that guide our determination in the case at bar as to whether a speedy trial violation has occurred because of delay: (1) the length of the delay, e.g., whether the delay is presumptively prejudicial; (2) the reason for delay; (3) whether the appellant has timely asserted his rights, and (4) the existence of actual prejudice as a result of the delay. Barker, supra, at 407 U.S. at 530-533, 92 S.Ct. at 2191-93. These factors were not intended to comprise an exhaustive list of considerations  only a guide. Id. at 407 U.S. at 530, 92 S.Ct. at 2191. "The test is more suggestive than exhaustive, ..." Avalos, supra, at 1110.
For two reasons, we believe that the Barker test is one that cannot be carried out in a certain, talismanic fashion. First, no one factor is dispositive as to the determination of a violation of defendant's rights. The test is one in which each factor is balanced against the others. No single factor is either necessary or sufficient as a pre-condition to finding a denial of one's rights. Avalos, supra, at 1110. Because of the foregoing point, the second reason takes on added life in that each case must be carefully gauged on its own facts.
Turning to consideration of the four Barker factors, the starting point is always the length of delay. Viewed as a threshold triggering mechanism, "[a] court need not inquire into the other factors unless there has been a delay of such length as to be `presumptively prejudicial.'" State v. Bonamy, 409 So.2d 518, 519 (Fla. 5th DCA 1982).[5] It is not completely clear what period of time is sufficient to rise to the level of presumptive prejudice for speedy trial purposes. It is clear, however, that the period of time sufficient to constitute presumptive prejudice is measured from the time the Sixth Amendment right to a speedy trial becomes effective  arrest, indictment, or the filing of an information, whichever comes first  until the time of trial. Gonzalez, supra, at 444.
In Bonamy, the court pointed to United States v. Anderson, 621 F.2d 292 (8th Cir.1980), for the proposition that a twelvemonth delay was presumptively prejudicial. See also Smith v. Mabry, 564 F.2d 249, 251 (8th Cir.1977) (10-month delay is presumptively prejudicial). Notwithstanding the above to the contrary, we feel persuaded more by the reasoning of the United States Courts of Appeal for the Fifth Circuit and the new Eleventh Circuit. The court in United States v. Greer, 655 F.2d 51 (5th Cir.1981), noted that a ten-and-one-half month delay is not presumptively prejudicial,[6] although a fifteen-month delay is.[7] One may thereby conclude that a period of presumptive prejudice triggering a Barker v. Wingo review apparently lies somewhere between the two time periods; nevertheless the Greer court, in examining an eleven-and-three-quarters month delay, was reluctant to express a view regarding any presumptive prejudice inhering in the case before it. Rather, the court proceeded to conduct a full-blown Barker v. Wingo review and to dispose of the case by finding no constitutional deprivation of the speedy trial right.
Our case involves a fourteen-and-one-half month delay from the time of the filing of the information until the time of the hearing, that is in our view presumptively prejudicial, thereby triggering a full Barker review. Consequently, we turn to the second factor regarding the reason for delay, of which there are three categories, including: (1) deliberate delay; (2) negligent delay, and (3) justified delay. Avalos, supra, at 1111-1114. "A deliberate attempt to delay the trial in order to hamper the *1172 defense should be weighed heavily against the government." Barker, supra, at 407 U.S. at 531, 92 S.Ct. at 2192. Examples of an intentional delay include forum-shopping, harrassment of the defendant, or delay to gain a tactical advantage. Avalos, supra, at 1111-1112, 1112 n. 22.
To be distinguished from the latter form of intentional delay for the purpose of gaining a tactical advantage are those cases falling within the third category of "justified delay," a situation in which the state undergoes considerable legitimate difficulty in amassing the evidence or rounding up witnesses, as well as cases involving a number of defendants. Avalos, supra, at 1114; Bonamy, supra, at 520. The legitimate need for additional time in preparing for a highly complex multi-defendant white collar conspiracy prosecution would appear to be far more justified than preparing for a relatively straight-forward sale of a small quantity of illegal contraband by a single defendant, such as in the case at bar. See, e.g., Avalos, supra, at 1110 n. 17 and cases cited therein. We therefore determine that as to the category of justified delay, the appellant has met his burden.
The third category, that of negligent delay by the state, includes delays attributable to such factors as an overcrowded court docket. Barker, supra, at 407 U.S. at 531, 92 S.Ct. at 2192; Bonamy, supra, at 520. Although the Bonamy court refers to this situation as a "neutral" reason for delay, implying that it should be weighed neither against a defendant nor the government, we feel compelled to point out that the term "neutral" is a misnomer. What is actually intended by this word is a delay to be weighed less heavily against the state than an intentional delay. Because the condition of an overcrowded court docket is one that is in the end perpetrated by the state, although not with any devious designs, the state, under such circumstances, must bear the burden of fault. Barker, supra, at 407 U.S. at 531, 92 S.Ct. at 2192; Greer, supra, at 53. Compare Florida Rule of Criminal Procedure 3.191(f), providing that exceptional circumstances permitting extension of time for speedy trial "shall not include general congestion of the court's docket, ... ."
It is unclear precisely where the case at bar falls. We have an unexplained delay which, to say the least, is flavored by the fact that it is a relatively unsophisticated case  one of common street crime. The appellant contends that this factor must be weighed against the government, since the reason for delay is unexplained, and it is the state that has the burden to explain this delay. Precisely who has the burden of proof as to this factor has apparently not been addressed by a Florida appellate court. The appellant contends that the delay in bringing him to trial was clearly due to the state's negligence. He argues that to force a criminal defendant to prove the reason for delay would be an unconstitutional shift in the burden of proof. See Mullaney v. Wilbur, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975).
We reject this position. In Mullaney, the United States Supreme Court held that the prosecution must prove beyond a reasonable doubt every fact necessary to satisfy each element of the crime charged. Herein we are not dealing with proof of the elements of a crime. We are confronted with a type of defense, and therefore the due process violations involved in shifting the burden of proof in Mullaney are inapplicable. Cf. Speights v. State, 414 So.2d 574 (Fla. 1st DCA 1982).
Appellant's argument that the state must account for the reason(s) for delay is not unpersuasive, however. To agree with the state that the party moving for dismissal has the burden of proof ignores the obvious  clearly the defendant will not in all cases be able to ascertain precisely why there has been a delay. Further, such an argument also avoids the fact that it is the state's responsibility to bring the defendant to trial within a period of time which is not presumptively prejudicial. Barker, supra, at 407 U.S. at 527, 92 S.Ct. at 2190.
There are a few federal decisions that suggest the state has the burden to present the reasons for the delay. In United States *1173 v. Dyson, 469 F.2d 735, 740 (5th Cir.1972), the appellee was prosecuted for draft evasion. Yet, it took the government twenty-two months to bring him to trial. The Dyson court condemned such practice, observing that "[t]he image of `excessiveness' [in not timely bringing the appellee to trial] is sharpened by the Government's total failure to proffer any explanation or justification for the delay." Id. Only last year in Greer, supra, at 53, the fifth circuit again stated that "the responsibility rests with the prosecution to justify the delay, ... ."
Following the direction of the Fifth Circuit Court of Appeals, we consider that it is in a defendant's best interests to make proper allegations in his motion to dismiss as to the reasons for prosecutorial delay. The burden to account for such delay, however, is decidedly upon the prosecution. "Obviously, the defendant is entitled to rebut and make a counter-showing... ." Dyson, supra, at 742 n. 8. In the absence of a showing by the state of the reasons for delay, a remand for an evidentiary hearing and supplementation of the record has been utilized as the proper vehicle for appellate disposition of the propriety of the denial of a motion to dismiss in some cases. United States v. Anderson, supra, at 294; Dyson, supra, at 741-742. Other cases have been able to make a determination on appeal without the need for remand when the issue has at least been briefed by the parties,[8] or reasons for delay are assigned by the prosecution, even if those reasons are not supported by the record.[9]
Herein, the appellant attributes the delay to the state's negligence rather than intentional conduct, while the state responds that the appellant was very difficult to locate due to the fact that he had moved three times within Alachua County during the period between the commission of the crime and arrest. The state offered no evidence as to the difficulties it incurred in locating defendant or attempts to arrest him. In view of the fact that appellant was stopped on two occasions by police officers, the purported reason offered by the state is unconvincing. Keeping in mind the relative simplicity of prosecuting a case of this type, we are inclined to accept appellant's contention that the delay was negligent. We therefore weigh the reason for delay factor against the state. Compare, United States v. Edwards, supra, at 577 F.2d 888-889.
The third factor requires that appellant assert his right to a speedy trial in a timely and vigorous manner. This is a seemingly minimal demand on a criminal defendant, Edwards, supra, at 889, and one which is geared toward avoiding prejudice to a defendant while denying him an escape hatch from the criminal justice system. United States v. Carter, 603 F.2d 1204, 1207 (5th Cir.1979). Failure to make a demand for a speedy trial pursuant to Rule 3.191, Florida Rules of Criminal Procedure, is always a point to be considered by a trial court. State v. Jenkins, 389 So.2d 971, 975 (Fla. 1980).
However, this seemingly simple factor, as noted in Edwards, supra, at 889, is a "particularly troublesome" point, which is attributable to confusing language in Barker, supra. At one point the Court stated that "[a] defendant has no duty to bring himself to trial ...,"[10] which implies that a defendant should not be penalized in the face of a delay in the provision of a speedy trial. At another point the Court emphasized that the "failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial."[11] Regardless of this ostensibly contradictory language, the appellant herein did assert his right to a speedy trial in a relatively timely manner on February 27, 1981  slightly more than two months following his arrest. It is equally clear that the state did not take this assertion lightly, since the case was brought to hearing on the motion on March 6, 1981. *1174 We therefore believe this factor should also be weighed in favor of the appellant.
The final point for analysis is whether the appellant has shown prejudice by the delay in his arrest and subsequent trial. Our Supreme Court has referred to this factor as the "key" consideration. State Department of Health & Rehabilitative Services v. Golden, 350 So.2d 344, 347 n. 8 (Fla. 1976). This factor, as delineated by Barker v. Wingo, supra, requires that a court ascertain whether there has been actual prejudice to a criminal defendant resulting from the delay in bringing him to trial.
As noted previously, the appellant's claim of prejudice stems from the fact that neither he nor his friends can recall where he was during the time of the drug sale. The courts have repeatedly stated, whether in a due process[12] or speedy trial[13] setting, that "[a]lthough faded memory may result in prejudice, ... that in order to prejudice the defense to the extent necessary to constitute a speedy trial violation, the faded memory must substantially relate to a material fact in issue.... Vague assertions of faded memory will not suffice." Edwards, supra, at 889.
There are many grounds upon which one might allege actual prejudice.[14] In each case it is clear that the prejudice must materially affect the defense, and it must be an effect that is more than a minimal one. State v. Wallace, 401 So.2d 863, 864 (Fla. 1st DCA 1981).
Where the appellants allege no more than the general inability to recall a transaction with desired specificity that occurs in any trial regardless of delay, and where such faded memories do not appear substantially to relate to any material fact in issue, no actual impairment of their defense for purposes of a speedy trial challenge is shown.
Avalos, supra, at 1116. Consequently, we are unable to conclude that any actual prejudice has been demonstrated.
For speedy trial purposes, Barker, supra, requires that the four factors must be weighed against each other. As a general rule a showing of actual prejudice, coupled with a lengthy delay by the government that is unexplained, states a compelling case for dismissal due to the denial of a speedy trial. Avalos, supra, at 1116. Similarly, there is authority for the view that when the first three Barker factors are heavily weighed in favor of the accused, the necessity for a demonstration of actual prejudice is not required. Id. This is because our constitution will not tolerate unexcusable misconduct by the prosecution.
In this case, while there is no actual prejudice, there is both a period of time that is presumptively prejudicial combined with a negligent delay as well as a timely assertion of the right to a speedy trial promptly acted upon by the state.[15] The first three factors tip the scales in favor of an accused, but we are unable to ascertain from our review of the record that these factors are heavily weighed in favor of the appellant. Although *1175 this case grasps at the outer reaches of what the constitution seemingly permits, it does not transgress the penumbral area of that which the constitution tolerates. Therefore, both the denial of the motion to dismiss and appellant's conviction are AFFIRMED.
SHIVERS and WENTWORTH, JJ., concur.
NOTES
[1] Three forms of prejudice are considered in due process or speedy trial violations stemming from time delay in arresting, indicting or bringing a defendant to trial. Without forming ironclad definitions, the three forms of prejudice can be defined in general terms. Actual prejudice always includes material impairment of the defendant's capacity to prepare a defense and in some cases may encompass personal prejudice as distinguished from prejudice to the defense. See United States v. Palmer, 502 F.2d 1233, 1235-1236 (5th Cir.1974), rev'd. on other grounds sub nom., Dillingham v. United States, 423 U.S. 64, 96 S.Ct. 303, 46 L.Ed.2d 205 (1975). Another form of prejudice utilized in due process cases is substantial prejudice which often combines actual prejudice together with unreasonable delay. State v. Duran, 91 N.M. 756, 581 P.2d 19, 20 (1978). The third form of prejudice is presumptive prejudice. Stemming from a time delay that is prima facie unreasonable, it triggers closer review of a case to determine whether there has been a speedy trial violation. United States v. Edwards, 577 F.2d 883 (5th Cir.), cert. denied, 439 U.S. 968, 99 S.Ct. 458, 58 L.Ed.2d 427 (1978).
[2] Both Avalos and Edwards are comprehensive opinions useful to our analysis. Edwards is an en banc decision of the former U.S. Circuit Court of Appeals for the Fifth Circuit. As federal appellate decisions, both cases provide significant guidance, since federal courts are the final word on federal constitutional law. Wright v. State, 418 So.2d 1087, 1091 (Fla. 1st DCA, 1982). Further, as opinions of the former fifth circuit, they represent binding precedent in the new eleventh circuit in which Florida is located. Schreiner v. McKenzie Tank Lines, 408 So.2d 711, 717 n. 9 (Fla. 1st DCA 1982), certified question docketed, no. 61,697 (Fla., February 11, 1982).
[3] The tenth circuit has approved the view that actual prejudice and tactical advantage to the prosecution must be shown in order to show a due process deprivation. United States v. Revada, 574 F.2d 1047, 1049-1050 (10th Cir.1978); see also United States v. Doe, 642 F.2d 1206, 1208-1209 (10th Cir.), cert. denied, 454 U.S. 817, 102 S.Ct. 94, 70 L.Ed.2d 86 (1981). The second circuit has given apparent approval to this standard in language that while suggestive is couched in uncertain terms. See United States v. Rubin, 609 F.2d 51, 66 (2d Cir.1979), aff'd., 449 U.S. 424, 101 S.Ct. 698, 66 L.Ed.2d 633 (1981). The ninth circuit has taken a somewhat similar, although distinguishable, view. In United States v. Mays, 549 F.2d 670, 677-678 (9th Cir.1977), the court utilized an approach requiring proof of three elements, including: (1) actual prejudice caused to the defendants, (2) the length of the delay, and (3) the reason for the delay. See also United States v. Cederquist, 641 F.2d 1347, 1350-1351 (9th Cir.1981). After a showing of actual prejudice, the court required consideration of the length of the delay but noted that this factor must be weighed in conjunction with the reason for the delay. Assuming actual prejudice, a finding of intentional or negligent prosecutorial misconduct combined with a lengthy government caused pre-arrest or pre-indictment delay would indicate a due process deprivation. Mays, supra, at 678.

It appears that the Fourth District Court of Appeal may have adopted this analysis in State v. Newman, 367 So.2d 251, 252 (Fla. 4th DCA 1979). Moreover, the Second District Court of Appeal in State v. Parent, 408 So.2d 612, 614 (Fla.2d DCA 1981), appears to give it tacit approval by citing our opinion in Griffin, supra, at 695. We have carefully reviewed Griffin and do not believe that Griffin adopted the factors set forth in Mays, supra. Further, we feel certain that this view is not the proper path to follow, because it ignores a statement by the U.S. Supreme Court that "[a]ctual prejudice to the defense of a criminal case may result from the shortest and most necessary delay; ... ." Marion, supra, at 404 U.S. at 324, 92 S.Ct. at 465; see also Arnold v. McCarthy, 566 F.2d 1377, 1383-1384 n. 1 (9th Cir.1978) (disagreeing with Mays and asserting that the length of delay is not relevant, because this is only evidence of possible prejudice and not actual prejudice). To the extent that Newman and Parent adopt the Mays view, we decline to follow those cases.
[4] Although Townley is a case from the newly created eleventh circuit, we find it very persuasive, since its clarifying viewpoint is derived from U.S. Supreme Court authority, as well as the fifth circuit case of United States v. Bland, supra, at 556 F.2d 1317, n. 7.
[5] Notwithstanding the general rule, cases involving a prima facie showing of actual prejudice might also trigger a full-blown Barker review in certain instances.
[6] United States v. Maizumi, 526 F.2d 848 (5th Cir.1976).
[7] Avalos, supra.
[8] Avalos, supra, at 1110 n. 18.
[9] Greer, supra, at 53.
[10] Barker, supra, at 407 U.S. at 527, 92 S.Ct. at 2190.
[11] Id. at 407 U.S. at 532, 92 S.Ct. at 2192.
[12] Hendricks, supra, at 40.
[13] Greer, supra, at 53-54 (emotional appearance of witness before jury due to death of relative and loss of memory by witness rejected as actual prejudice); Avalos, supra, at 1115-1116 (minimal anxiety, faded memory and lost witnesses unconnected to a material fact similarly rejected); Bonamy, supra, at 520; and Newman, supra, at 252.
[14] may first result from oppressive pre-trial incarceration which could result in the loss of the defendant's job, disrupt his family, and hinder him in the preparation of his defense. Second, a defendant may suffer anxiety and concern due to public scorn and the chilling effect that a pending trial may have on his freedom of association. Third, and most importantly, there is the possibility that the defense will be impaired due to fading memories and lost evidence.
Bonamy, supra, at 520.
[15] The instant case action is somewhat similar to Edwards, supra, at 577 F.2d 889 n. 8, wherein the court noted that a heavy weighing of the first three factors in favor of the accused negates a need for a showing of actual prejudice. The Edwards court found that the second factor in that case was not heavily weighed in favor of the accused, since the government had not "idly ignored, vigorous speedy trial assertions" over a long period. No speedy trial violation was found to have occurred.